**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQUIRE
Attorney ID No. 319524
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0834
tim@dereksmithlaw.com
*Attorneys for Plaintiff, Megan Hale*

<u>IN THE UNTIED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

| | | |
|---|---|---|
| MEGAN HALE | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Civil Action No. _____** |
| *v.* | : | |
| | : | |
| CHILDREN'S HOSPITAL OF | : | **JURY TRIAL DEMANDED** |
| PENNSYLVANIA, | : | |
| HOLLY BURNSIDE (individually), | : | |
| and SHAWN O'CONNOR (individually) | : | |
| | : | |
| Defendants | : | |

Plaintiff, MEGAN HALE, by and through her undersigned counsel, hereby files this Civil

Action Complaint against Defendants CHILDREN'S HOSPITAL OF PENNSYLVANIA, HOLLY

BURNSIDE, and SHAWN O'CONNOR (collectively "Defendants") and avers the following:

<u>PARTIES</u>

1. Plaintiff, MEGAN HALE (hereinafter also referred to as "Plaintiff") is a female individual

   who was, at all times material, a resident of Nebraska working remotely and in person in

   Philadelphia, PA.

1

2.  At all times material, CHILDREN'S HOSPITAL OF PENNSYLVANIA (hereinafter referred to as "Defendant CHOP") operates its headquarters at East Penn Square in Philadelphia, Pennsylvania 19107.

3.  At all times material, Defendant CHOP operates a principle place of business located at 3400 Civic Center Boulevard in Philadelphia, Pennsylvania 19104.

4.  At all times material, Defendant HOLLY BURNSIDE (hereinafter referred to as "Defendant Burnside") was and is employed for Defendant CHOP as a Program Manager for Clinical Futures.

5.  At all times material, Defendant Burnside held supervisory authority over Plaintiff.

6.  At all times material, Defendant SHAWN O'CONNOR (hereinafter referred to as "Defendant O'Connor") was and is employed for Defendant CHOP as an Administrative Director for Clinical Futures.

7.  At all times material, Defendant O'Connor held supervisory authority over Plaintiff.

8.  At all times material, Defendants were the joint and/or sole employer of Plaintiff.

## NATURE OF THE CASE

9.  Plaintiff has experienced a continuing and ongoing pattern of sustained pregnancy discrimination and continued retaliation at the hands of Defendants from 2017-2018 when she became pregnant until she was constructively discharged in 2023.

10. Plaintiff complaints pursuant to 1964 Civil Rights Act ("Title VII"), violations of the Pregnancy Discrimination Act of 1978 ("PDA"), §§701 *et. seq* (42 U.S.C. §200e(k)), Pregnant Workers Fairness Act of 2023 (PWFA) (42 U.S.C. §2000gg), the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et. seq*., and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102 *et. seq*., and seeks damages to redress the injuries Plaintiff has

suffered as a result of being subjected to discrimination, retaliation, and constructive discharge by the aforementioned Defendants.

11. Furthermore, this action is to redress the Defendants' unlaw employment practices against Plaintiff, including Defendants' unlawful discrimination against Plaintiff because of her sex/pregnancy and/or disability and for Defendants wrongful actions against Plaintiff leading up to, and including, her unlawful termination by way of constructive discharge.

12. Plaintiff seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post- judgment interest as remedies for Defendants' violations of her rights.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

14. This Court has jurisdiction in that this action involves a Federal Question under Title VII of the Civil Rights Act of 1964.

15. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

16. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

17. Venue is proper in this district based upon Defendants' principal place of business within the Eastern District of Pennsylvania.

18. Additionally, the events that give rise to Plaintiff's claim took place within the Commonwealth of Pennsylvania within the Eastern District of Pennsylvania.

19. Plaintiff filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

20. The EEOC issued Plaintiff, a Dismissal and Notice of Rights, also known as a Right to Sue letter.

21. This action is hereby commenced within 90 days of receiving the Dismissal and Notice of Rights from the EEOC.

## **MATERIAL FACTS**

22. In February 2011, Plaintiff was hired by Defendant CHOP as a Grant Writer.

23. Plaintiff worked remotely but periodically would return to Philadelphia pursuant to her travel allowance where she had her own office in Defendant CHOP's facilities.

24. Due to Plaintiff's exemplary performance, she was eventually promoted to Senior Grant Writer and began overseeing a team of grant writers.

25. On or about June, 2017, Plaintiff informed Defendant CHOP that she was pregnant.

26. Plaintiff went on maternity leave about February 21, 2018.

27. While on maternity leave in 2018, Defendant CHOP demoted Plaintiff.

28. Also in 2018 Plaintiff was demoted from her supervisory responsibilities, her monthly travel allowances were removed, and the programs that she had developed and coordinated were reassigned.

29.

30. Plaintiff's new supervisor was Defendant Burnside.

31. Defendant Burnside immediately began treating Plaintiff in a discriminatory manner as a result of Plaintiff's pregnancy.

32. While Plaintiff was out on maternity leave in about April 2018, Defendant Burnside entered Plaintiff's locked office in Philadelphia and cleared out Plaintiff's files, personal property, and CHOP equipment that Plaintiff needed to do her job.

33. While doing so, she removed pertinent files with protected health information ("PHI") of patients.

34. When Plaintiff requested the return of her files and equipment, her requests were ignored.

35. About May 2018 Plaintiff returned from maternity leave.

36. About May 2018 Defendant Burnside indicated to Plaintiff that she had thrown out some or all of Plaintiff's files and refused to return Plaintiff's equipment.

37. The relationship with Defendant Burnside was rife with hostility from Defendant Burnside towards Plaintiff.

38. Plaintiff had reported these issues with Deborah Hillman who ultimately retired in late 2018 or early 2019 without resolving the issues.

39. About October 2019, Plaintiff went to Defendant O'Connor to complain of the inappropriate handling of patient's PHI and her missing personal property.

40. Throughout this time Defendant Burnside continued to harass Plaintiff by interfering with Plaintiff's work and daily operations by taking Plaintiff off of emails, rescheduling meetings without telling Plaintiff, rescheduling meetings for times Burnside knew Plaintiff was unavailable, improperly cataloging Plaintiff's time, and other similar persistent petty actions.

41. Defendant Burnside also removed Plaintiff from programs she had developed.

42. Defendant O'Connor did nothing to reobtain Plaintiff's missing property and the PHI.

43. Defendant Burnside's retaliatory harassment of Plaintiff continued throughout 2019.

44. In about June 2019 Plaintiff notified Defendant O'Connor that she was pregnant again.

45. Plaintiff informed O'Connor that she was not comfortable notifying Defendant Burnside about her pregnancy because Burnside was systematically discriminating against her, harassing her, and retaliating against her for her previous pregnancy.

46. Defendant O'Connor almost immediately notified Burnside of Plaintiff's second pregnancy.

47. Defendant Burnside did not cover any of Plaintiff's work during her pregnancy and did not notify anyone at CHOP that Plaintiff was on leave, so Plaintiff was forced to field and respond to emails and inquiries all throughout her second pregnancy.

48. Burnside's deliberate failure and neglect to notify Plaintiff's team of Plaintiff's second pregnancy or her leave resulted in Plaintiff continually receiving calls and requests for work during her maternity leave causing Plaintiff tremendous stress and discomfort.

49. During this time in 2019 into 2020, Plaintiff was meeting one-on-one each month with Defendant O'Connor informing him that Defendant Burnside's retaliatory and discriminatory actions were continuing and were unresolved.

50. Defendant repeatedly assured Plaintiff he was addressing the issue.

51. About the first half of 2020 Plaintiff began receiving letters from a law firm saying she had money in the Department of Treasury.

52. Due to some administrative issue, which was caused by Defendant Burnside changing Plaintiff's time sheets, several of Plaintiff's paychecks were diverted to an account at Treasury.

53. Defendants denied that Plaintiff's checks were getting diverted.

54. Ultimately, in 2021 Defendant Burnside's harassment continued with Burnside mis-scheduled Plaintiff's meetings and vacation times and interfered with one of Plaintiff's big projects.

55. Plaintiff reported again to HR that Burnside was continuing to harass her and retaliate against her.

56. Throughout this time nothing was done to address Plaintiff's continual reports of discrimination, harassment, and retaliation.

57. Throughout 2022 Defendant Burnside continued her petty, harassing, discriminatory, and retaliatory behavior and Plaintiff continually reported same to HR and to Defendant O'Connor without any effect or result to resolve Defendants' unlawful actions against Plaintiff.

58. In June 2023, Plaintiff further escalated the issue of her missing items to Human Resources.

59. Despite HR involvement, no one was able to locate the stolen files, personal property of Plaintiff, and CHOP equipment.

60. The files containing patient protected health information were also never recovered, an unethical violation of HIPAA standards.

61. From 2018 through 2023, Defendant Burnside would refuse to respond to Plaintiff's emails about pertinent work information.

62. From 2018 through 2023, on more than one occasion, Defendant Burnside would ignore Plaintiff's time sensitive emails which prohibited Plaintiff from completing her tasks in a timely and effective manner.

63. From 2018 through 2023, on more than one occasion, Defendant Burnside would remove Plaintiff from email chains for projects that Plaintiff was leading.

64. From 2018 through 2023, on more than one occasion, Defendant Burnside would interrogate Plaintiff about her childcare arrangements.

65. Defendant Burnside would not do the same for similarly situated male employees, such as Defendant O'Connor.

66. From 2018 through 2023 Plaintiff made complaints to Defendant O'Connor, who advised he was working with Defendant Burnside, but there was never any evidence that he addressed Plaintiff's concerns.

67. Defendant Burnside's discriminatory treatment of Plaintiff continued unabated and unaddressed by Defendant CHOP from 2018 through 2023 when Plaintiff was forced to resign due to the abject lack of action to alleviate the discrimination and harassment she endured.

68. Moreover, Defendant O'Connor increased Plaintiff's workload by thirty (30%) percent without her knowledge.

69. In August 2023, Defendant O'Connor negotiated a new project with a physician that Plaintiff had previously worked with, but without Plaintiff's prior knowledge.

70. Defendant O'Connor purposely excluded Plaintiff from these negotiations.

71. It is noted that throughout Plaintiff's employment at Defendant CHOP, both Defendant Burnside and Defendant O'Connor consistently gave Plaintiff stellar performance evaluations.

72. Due to the discriminatory treatment Plaintiff faced, Plaintiff sought a new position at Defendant CHOP.

73. However, when Defendant O'Connor learned of this, he went to Human Resources and advised them to change Plaintiff's status to "no hire'.

<u>**COUNT I**</u>
**Pregnancy/Sex Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,** *et seq.*
*(Plaintiff v. Defendant CHOP)*

74.      Plaintiff incorporates by reference and realleges every allegation in their Complaint

as if fully set forth herein at length.

75.      Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant

part:

> "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire
> or discharge any individual, or otherwise to discriminate against any individual with
> respect to his compensation, terms, conditions, or privileges of employment, because
> of such individual's race, color, religion, sex, or national origin; or (2) to limit,
> segregate, or classify his employees or applicants for employment in any way which
> would deprive or tend to deprive any individual of employment opportunities or
> otherwise adversely affect his status as an employee, because of such individual's race,
> color, religion, sex, or national origin."

76.      In 1978, Congress amended Title VII to prohibit discrimination based on pregnancy

as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to,
> because of or on the basis of pregnancy, childbirth, or related medical conditions; and
> women affected by pregnancy, childbirth, or related medical conditions shall be
> treated the same for all employment-related purposes, including receipt of benefits
> under fringe benefit programs, as other persons not so affected but similar in their
> ability or inability to work, and nothing in section 2000e–2(h) of this title shall be
> interpreted to permit otherwise.
> *42 U.S.C.A. § 2000e(k).*

77.      At all times material, Plaintiff was a pregnant person entitled to the protections of

Title VII.

78.      At all times material, Defendant CHOP had actual knowledge of Plaintiff's

pregnancy.

79.      Defendant CHOP took materially adverse action against Plaintiff by forcing her

constructive discharge.

80.     Defendant CHOP's discrimination against Plaintiff because of Plaintiff's pregnancy status was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

81.     Defendant CHOP's decision to neglect to address the pervasive discrimination against Plaintiff because of Plaintiff's pregnancy is an unlawful employment practice in violation of Title VII.

82.     As a direct and proximate result of Defendant CHOP's constructive discharge of Plaintiff's employment in violation of the Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.

<u>COUNT II</u>
**Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq**
(***Plaintiff v. Defendant CHOP***)

83.     Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

84.     To state a claim for hostile work environment, a plaintiff must show: (1) she "suffered intentional discrimination" because of [her membership in a protected class]; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected the plaintiff"; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "the existence of respondeat superior liability, meaning the employer is responsible." *Fields v. Am. Airlines, Inc*., 2023 U.S. Dist. LEXIS 177444, *84 *citing Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 411 (D.N.J. 2003).

85.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or

effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

86.      At all times material, Defendant CHOP's intentional, willful discrimination based on Plaintiff's sex was not welcomed by Plaintiff.

87.      At all times material, the intentional, discrimination based on Plaintiff's sex by Defendant CHOP was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

88.      At all times material, Plaintiff believed her work environment to be hostile or abusive as a result of Defendant CHOP's discriminatory conduct on the basis of Plaintiff's sex.

89.      The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

90.      Defendant CHOP provided a futile avenue for complaint.

91.      Defendant CHOP acted upon a continuing course of conduct.

92.      Defendant CHOP 's unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

93.      As a result of Defendant CHOP 's violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### COUNT III
**Pregnancy/Sex Discrimination/Hostile Work Environment under PHRA § 955**
**(against Defendant CHOP)**

94. Plaintiff repeats and realleges every allegation made in the above paragraphs of this complaint.

95. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

96. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of Plaintiff's sex/pregnancy and/or disability.

97. Plaintiff's protected characteristics played a determinative factor in Defendant's decisions. Defendant cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendant for their actions against Plaintiff are pretextual and can readily be disbelieved.

98. Alternatively, Plaintiff's protected status played a motivating part in Defendant's decisions even if other factors may also have motivated their actions against Plaintiff.

99. Defendant acted with the intent to discriminate.

100. Defendant acted upon a continuing course of conduct.

101. Defendant acted with the intent to discriminate against Plaintiff because of her sex/pregnancy. Defendant wrongfully constructively discharged Plaintiff, in violation of the PHRA, solely or in part because of her sex/pregnancy.

102.     Plaintiff hereby makes a claim against Defendant under all applicable paragraphs

of the PHRA § 955 and seeks all damages available at law and equity.

## **COUNT IV**
**Discrimination under PHRA – Aiding and Abetting**
**(against individually named Defendants only)**

103.     Plaintiff repeats and realleges every allegation made in the above paragraphs of this

complaint. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice:

"For any person, employer, employment agency, labor organization or employee, to aid,

abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice, or to obstruct or prevent any person from complying with the

provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to

commit any act declared by this section to be an unlawful discriminatory practice."

104.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA §

955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## **COUNT V**
**Disability Discrimination in Violation of The**
**Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112**
***(Plaintiff v. Defendant CHOP)***

105.     Plaintiff incorporates by reference and realleges every allegation in this

Complaint as if fully set forth herein at length.

106.     The ADA prohibits discrimination on the basis of a disability, and provides:

**(a) General rule**
No covered entity shall discriminate against a qualified individual on the basis of
disability in regard to job application procedures, the hiring, advancement, or
discharge of employees, employee compensation, job training, and other terms,
conditions, and privileges of employment.

*42 U.S.C. § 12112(a).*

107.     At all times material, Defendant CHOP was a covered entity subject to the requirements of the ADA.

108.     At all times material, Plaintiff was a qualified individual with a disability entitled to the protections of the ADA.

109.     At all times material, Defendant CHOP had actual knowledge of Plaintiff's status as a qualified individual with a disability entitled to the protections of the ADA.

110.     Defendant CHOP terminated Plaintiff's employment on July 26, 2023.

111.     At all times material, Plaintiff's disability status was the motivating and/or determinative factor in Defendant CHOP's decision to terminate Plaintiff employment.

112.     Defendant CHOP's decision to terminate Plaintiff because of Plaintiff's disability status was intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

113.     Defendant CHOP's decision to constructively terminate Plaintiff's employment because of Plaintiff's disability is an unlawful employment practice in violation of the ADA.

114.     As a direct and proximate result of Defendant CHOP's unlawful constructive termination of Plaintiff's employment in violation of ADA, Plaintiff has suffered and continues to suffer emotional and financial harm.


## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

14

Plaintiff repeats, incorporates by reference, and realleges every allegation in this Complaint as if fully set forth herein at length.

**WHEREFORE**, Plaintiff demands judgment against the named Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and lost wages, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, interest and disbursements of action, and for all other relief available under the law or at equity.

Respectfully submitted,

Date: <u>August 21, 2024</u>

**DEREK SMITH LAW GROUP, PLLC**

By: <u>*/s/ Timothy J. Prol, Esq.*__</u>
Timothy J. Prol, Esq.
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0834
tim@dereksmithlaw.com
*Attorneys for Plaintiff, Megan Hale*